# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                    **Civ. Case No. 07-2260-JWL**
                                        **Crim. Case No. 04-20150-JWL**

LARRY RUCKER,

        Defendant.

## MEMORANDUM & ORDER

## I.    Background

On November 18, 2004, Mr. Larry Rucker was indicted on six counts, including two counts under 18 U.S.C. 922 (g)(1), Felon in Possession of a Firearm ("Count 1" and "Count 6"), two counts under 18 U.S.C. 924(c)(1)(A)(ii), Use and Carry a Firearm During and in Relation to a Crime of Violence ("Counts 2 and 4"), and two counts under 18 U.S.C. 1951, Interference with Commerce by Threats or Violence ("Counts 3 and 5").  Count 1 related to an incident on September 20, 2004, whereas the rest of the counts arose from events, namely the robbery of two businesses, approximately $169 from the KC Quick Pick and approximately $120 from Bargains to the Max thrift store, on October 26, 2004.  This Court granted in part and denied in part Mr. Rucker's "Motion to Sever Counts for Trial," severing the trial of Count 1 from the trial of Counts 2 6.  The Court simultaneously denied Mr. Rucker's Motion to Suppress eyewitness identification

that sought to suppress pretrial and trial identification testimony of the two robbery victims.  On April 7, 2005, a jury found Mr. Rucker guilty on counts 2-6, and Count 1 was dismissed on June 1, 2005, upon motion by the Government.  Mr. Rucker was then sentenced to a controlling term of 509 months.  After an unsuccessful appeal filed August 15, 2005,[1] Mr. Rucker filed the current motion at issue, a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Motion") on June 18, 2007.

Mr. Rucker raises several issues in his Motion.  First, he claims the Court did not have jurisdiction under the Hobbs Act where the Government failed to establish how both robberies interfered with interstate commerce.  He also claims he was denied a fair trial when the Court failed to remove a juror when the prosecutor's mother-in-law was acquainted with that juror, and in the Traverse adds that the Government's expert witness was also acquainted with the same juror.  His final claim is that he was denied a fair trial and due process rights as a result of ineffective assistance of counsel.  He alleges several bases for this final claim, including that his attorney failed to adequately communicate with him, he failed to investigate potential witnesses such as experts regarding identification, that his attorney compelled him to testify, thereby involuntarily waiving his right to remain silent and opening the door to testimony related to the firearm at issue in the severed Count 1, that the attorney failed to object to the racial composition of the jury pool, and finally, that his attorney failed to object to the government using a peremptory challenge to remove the only potential juror that was his same race.  For the reasons

---

[1] Mr. Rucker raised two issues, which included that there was insufficient evidence supporting his convictions and that the Court erred in the admission of certain evidence.

discussed below, Mr. Rucker's Motion is DENIED.

## II.    Legal Standard

Mr. Rucker is entitled to relief only if his custody or sentence violates federal law or the Constitution.  28 U.S.C. § 2255.  The Court must first determine whether Mr. Rucker has alleged specific facts that, if proven, would entitle him to relief on that basis.  If he does have a cognizable claim, then the Court must determine whether an evidentiary hearing is necessary to determine the truth of the factual allegations.  *Id.*  A court need not grant the evidentiary hearing where the factual allegations are contradicted by the record, inherently incredible, or when they are conclusions rather than statements of fact. *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir.1999), quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir.1995). An evidentiary hearing is necessary when the petition, files, and record of the case cannot conclusively show that the petitioner is not entitled to relief.  § 2255.

## III.    Discussion

1.    Whether the Court had jurisdiction under the Hobbs Act where the Government failed to establish how both robberies interfered with interstate commerce

While the Government argues this issue was waived when Mr. Rucker did not raise it on direct appeal, Mr. Rucker put forward in his Traverse that his appellate counsel was ineffective for failing to raise this claim on direct appeal and also asserted that this is a "jurisdictional" element that can be raised at any time. *See generally United States v. Cook*, 997 F.2d 1312, 1320 (10th Cir. 1993) ("Section 2255 motions are not available to test the legality of matters which should have been raised on direct appeal"), citing *United States v. Frady*, 456 U.S. 152, 165

(1982).   As to Mr. Rucker's latter argument, this is not a challenge to the subject-matter jurisdiction of the Court because the indictment included offenses under the Hobbs Act, which gave this Court jurisdiction.   Instead it is an issue of whether the evidence satisfied the jurisdictional element of the statute, and therefore, whether it was sufficient to convict Mr. Rucker.  *See, e.g., United States v. Wiseman*, 172 F.3d 1196, 1214 (10th Cir. 1999) (addressing whether the interstate commerce element of the Hobbs Act was satisfied, holding "the evidence was sufficient").  *See generally Cook*, 97 F.2d at 1320 (discussing that if the issue is whether the federal courts lacked jurisdiction, it can be addressed at any time because jurisdictional issues are never waived, also noting that the defendant was convicted under three offenses all falling under federal statutes so the court had subject matter jurisdiction).  That it is a "jurisdictional" element does not mean it can be raised at any time, so this does not cure that the issue was not raised on direct appeal.

If the ineffective assistance of appellate counsel claim is valid, it may excuse the waiver of the issue arising from not bringing it on direct appeal.  A defendant who fails to present an issue on direct appeal is barred from raising it in a collateral section 2255 petition unless he can show cause for his procedural default and actual prejudice resulting from the alleged errors, or can show that a fundamental miscarriage of justice will occur if the claim is not addressed.  *Cook*, 997 F.2d at 1320.  "A defendant may establish cause for his procedural default by showing that he received ineffective assistance of counsel in violation of the Sixth Amendment." *Id.* at 392.

To determine whether appellate counsel was ineffective for failing to raise the issue, this Court must evaluate the merits of the underlying claim.  *Cargle v. Mullin*, 317 F.3d 1196, 1202

4

(10th Cir.2003). This Court denies the claim on the merits, so appellate counsel was not ineffective and the claim is barred from collateral attack. It appears Mr. Rucker's argument stems from a misunderstanding of the requirements of the Hobbs Act. He claims there was no evidence of "interference" with interstate commerce as a result of the robberies, so the jurisdictional element has not been met. However, that is not the standard the court must use. The Hobbs Act, 18 U.S.C. § 1951(a), provides:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

From the face of the statutory language, it is apparent that the robbery does not have to "interfere" with interstate commerce as Mr. Rucker suggests, but instead must "in any way or degree obstruct[], delay[], or affect commerce."

In the context of robberies of businesses, as was the case here, courts have broadly interpreted this standard to mean that only a potential and de minimis effect need be proven. *See, e.g., United States v. Zeigler*, 19 F.3d 486, 491 (10th Cir. 1994) (concluding that amounts from $160 to $1500 were not "so trivial as to automatically place these robberies beyond the reach of the Hobbs Act"). "This minimal effect can be established by evidence that the stolen money would have been used to purchase items in interstate commerce, a concept known as the 'depletion of assets theory.'" *United States v. Wiseman*, 172 F.3d 1196, 1214 (10th Cir. 1999). "A jury may infer that interstate commerce was affected to some minimal degree from a showing

5

that the business assets were depleted." *Zeigler*, 19 F.3d at 493.  In fact, "only a potential effect on commerce is required to satisfy the interstate commerce element." *Wiseman*, 172 F.3d at 1216 ("[T]he government is not required to show that the particular stolen dollars themselves would have entered the stream of interstate commerce.  Instead, the government must show only that the stolen dollars depleted the total assets of the [business] which were available to engage in interstate commerce.").

There was sufficient evidence that the two businesses robbed were engaged in interstate commerce.  The jury could reasonably infer that the depletion of the assets, approximately $169 from KC Quick Pick and $120 from Bargains to the Max, obstructed, delayed, or affected interstate commerce. Mr. Thomas Killpack, the owner of the KC Quick Pick, testified he buys his items for the store from everywhere, including Texas, Florida, and Omaha, and the Government provided several exhibits of invoices for these out-of-state distributors. Max Packer, a co-owner of Bargains to the Max thrift store, also testified and the Government showed through exhibits that they bought "a lot of [their] stuff" for their store in Kansas from a wholesaler in Missouri and every once in awhile bought items from a place in Arkansas.  This evidence showed the businesses were engaged in interstate commerce, and the depletion of the assets from the money taken during the robberies of these businesses meets the necessary test to satisfy this element.  Therefore, the jurisdictional element on this count was satisfied because interstate commerce was at least potentially affected, and appellate counsel was not ineffective for failing to raise this claim.  Mr. Rucker's § 2255 claim on this basis is denied.

2.    Whether Mr. Rucker was denied a fair trial when the Court failed to remove a juror

> acquainted with the prosecutor's mother-in-law and one of the Government's expert witnesses

A defendant has a right to a fair trial, which includes the right to an impartial jury. *Irvin v. Dowd*, 366 U.S. 717, 722 (1961) ("In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors" ). "[A]n impartial jury consists of nothing more than jurors who will conscientiously apply the law and find the facts." *Lockhart v. McCree*, 476 U.S. 162 (1986). In his Motion, Mr. Rucker argues that he was denied the right to a fair trial when the Court did not remove a juror after discovering that she was acquainted with the prosecutor's mother-in-law. In his Traverse he adds a separate basis for this claim that the same juror was acquainted with the prosecution's expert witness. Defense counsel indicated that had he known of these at the time of voir dire he might have moved to dismiss the juror for cause, but after the discussion at the bench, he did not move for the alternate to replace that juror.

As to the relation to the prosecutor, there was no indication that the juror even knew that the prosecutor was related to her mother-in-law as the last names were different (the mother-in-law's name was Davis while the prosecutor's last name was Morehead). The Court also noted that the juror indicated nothing during voir dire to indicate she knew who Ms. Morehead was. Therefore, the trial transcript contradicts that there was any relationship between the juror and the prosecutor that could have resulted in the juror not being impartial.

As to the juror's potential bias in relation to the expert witness, the Court will not consider arguments first raised in Mr. Rucker's Traverse. *See, e.g., Vanderlinden v. Koerner*, 2006 WL 1713929 (D. Kan. 2006), citing *Loggins v. Hannigan*, 45 Fed. Appx 846, 849, 2002 WL 1980469

(10th Cir. 2002) ("We will not consider petitioner's argument that forcing the wife/victim to her car was insufficient to support the kidnapping charge as this issue was first raised in petitioner's traverse to respondents' answer to habeas petition."); *see also United States v. Sangs*, 31 Fed. Appx 152, 2001 WL 1747884 (5th Cir. 2001) (reaching the same conclusion as the other cases in a section 2255 context, stating the Movant "raised this argument for the first time in his traverse to the Government's answer and did not file a motion for permission to file an amended complaint as required by Fed. R. Civ. P. 15. . . .He has not shown that the district court abused its discretion in refusing to consider the new issue raised in his traverse."); *United States v. Barrett*, 178 F.3d 34, 35 (1st Cir. 1999), cert denied, 528 U.S. 1176 (2000) ("A Traverse is not the proper pleading to raise additional grounds for relief").  While this claim is procedurally barred because Mr. Rucker did not raise it in his original Motion, the discussion below indicates it would also be denied on the merits.

There is no rule that a juror cannot be acquainted in any way with any attorney or witness in a case in order to have a fair trial. *See, e.g., United States v. Frank*, 901 F.2d 846 (10th Cir. 1990) (affirming a trial court's denial of a challenge for cause to remove a juror when that juror acknowledged being acquainted with the prosecuting attorney and a founding member of MADD).  Instead, "[a]n important part of the district judge's broad discretion centers on his response to allegations of juror bias or misconduct. For example, it is within the trial court's discretion to determine whether and when to hold an evidentiary hearing on such allegations." *United States. v. Bradshaw*, 787 F.2d 1385 (10th Cir. 1986) (declining to presume bias where a juror was acquainted with a Government witness); *see also United States v. Gallegos*, 975 F.2d

8

710, 712 (10th Cir. 1992) ("Keeping in mind the juror's responses to the judge's questions and the juror's mere acquaintance with a defense witness, we are hard pressed to see how the district court's conduct constituted error, let alone plain error." (emphasis added)).  This Court did not hold a hearing that would have likely only drawn attention to the mere potential situation about the acquaintances, and there was nothing indicating any knowledge by the juror of the potential connections, let alone bias.  Similarly, the Court now concludes that Mr. Rucker was not denied his right to a fair trial because this juror was not removed.

Even in hindsight, Mr. Rucker does not and cannot provide specific facts alleging that these potential acquaintances in any way affected the impartiality of the jury.  Mr. Rucker also provided no factual allegations that the juror would not or did not follow the admonitions to the jury, which are presumed to be followed. *See United States v. Greer*, 620 F.2d 1383,  1390 (10th Cir. 1980) ("It is presumed that jurors will conscientiously observe the instructions and admonitions  of the court."). Therefore, there is no indication that the jury did not decide its verdict based on the law and facts presented, so Mr. Rucker's claim that he was denied his right to a fair trial is unfounded and consequently denied.

3.      Whether Mr. Rucker's attorney provided constitutionally ineffective assistance

To obtain relief under § 2255 on the grounds of ineffective assistance of counsel, Mr. Rucker must first establish that his lawyer's performance was deficient as compared to an objective standard of reasonable performance. *See Strickland v. Washington*, 466 U.S. 668, 687 88, 694 (1984).  "In applying this test, we give considerable deference to an attorney's strategic decisions and 'recognize that counsel is strongly presumed to have rendered adequate assistance

and made all significant decisions in the exercise of reasonable professional judgment.'" *Bullock v. Carver*, 297 F.3d 1036, 1044 (10th Cir. 2002), quoting *Strickland*, 466 U.S. at 690.  Mr. Rucker must also prove that there is a reasonable probability that the lawyer's errors prejudiced the outcome of the proceedings against him.  *Strickland*, 466 U.S. at 688.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 693 94. The Court does not need to determine whether counsel's performance was deficient before determining whether a defendant has established prejudice under the second prong. *United States v. Jones*, 852 F.2d 1275, 1277 (10th Cir. 1988).  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *United States v. Taylor*, 832 F.2d 1187, 1194-95 (10th Cir. 1987) (quotations omitted) .  Conclusory allegations, without factual basis, are insufficient to support claims of ineffective assistance of counsel. *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir.1994).

a.    Meeting with Mr. Rucker only twice before trial, thereby failing to adequately communicate to obtain necessary information

According to Mr.Rucker, his lawyer, Mr. Jenab, visited him only twice at the prison.  At the first visit, Mr. Jenab told him he would investigate Mr. Rucker's side of the events and come back to see Mr. Rucker.  He claims that Mr. Jenab only came to see him one other time when he brought the Government's plea agreement offer to him.  As a result, he claims that his attorney did not provide effective assistance because Mr. Jenab had a duty to adequately communicate with Mr. Rucker to ascertain the necessary information to be able to investigate the facts and prepare an adequate defense to put the prosecution's case to the "adversarial testing" guaranteed

10

by the Sixth Amendment.  Mr. Rucker does not put forth any factual allegations of what he would have communicated to Mr. Jenab if he would have visited him more, what "necessary information" was missing as a result, that Mr. Jenab was not communicating with him at all even if not in person, or how only meeting in person twice prejudiced his case.  Instead, this is a conclusory statement that cannot be the basis for a valid ineffective assistance of counsel claim. While the Court is required to construe Mr. Rucker's Motion liberally, *see Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991), it is "not required to fashion [Mr. Rucker's] arguments for him where his allegations are merely conclusory in nature and without supporting factual averments." *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir.1994) (rejecting several § 2255 arguments based on ineffective assistance of counsel because of the conclusory nature of those claims); *see also United States v. Lopez*, 100 F.3d 113, 120 n.7 (10th Cir.1996) (noting that conclusory statements in the defendant's § 2255 motion did not show there was a reasonable probability that the result of his sentencing procedure would have been different).

Furthermore, Mr. Rucker cannot prove prejudice, under *Strickland's* second prong, resulting from the limited in-person communication.  In the Traverse, he acknowledges that "Mr. Jenab was provided with the necessary information." Traverse, p. 8.  If his counsel had the necessary information needed to pursue Mr. Rucker's case, then Mr. Rucker cannot show that but for counsel's actions of only meeting him twice, the outcome of his case would have been different.  Therefore, the claim is denied.[2]

---

[2] To the extent this claim is based on the failure to investigate witnesses, that is subsequently addressed as a separate claim.

b.      Refusing to converse with Mr. Rucker in regards to any defense

Mr. Rucker claims that his attorney, Mr. Jenab, refused to converse with him as to any defense, but this is contradicted by the record.  Mr. Rucker writes in his Motion that he told Mr. Jenab there was a mistake in identity and he should contact Mr. Rucker's sister who could testify he was at her house when the robberies occurred.  Obviously, then, Mr. Jenab did converse with him as to this defense, or Mr. Rucker would not have been able to offer that suggestion to his counsel. Mr. Jenab even called Mr. Rucker's sister to the stand at trial.  Therefore, this claim that Mr. Jenab refused to converse with Mr. Rucker in regards to any defense is contradicted both by his own Motion and the trial transcript.  The claim is denied.

c.      Failing to interview potential witnesses

The first set of potential witnesses that Mr. Rucker alleges his attorney should have contacted were "witnesses who either lived and/or had business on the streets in which the robberies occurred" in order to show that the robberies did not "interfere with commerce." This argument was presented in his Motion with the previously rejected claim that the Government did not prove the commerce jurisdictional hook under the Hobbs Act.  By construing the Motion liberally, the Court considers this also as an ineffective assistance of counsel claim, but denies it for the same reasons as the first claim previously discussed.  Mr. Rucker's understanding of the law about the jurisdictional element is incorrect.  Therefore, he cannot prove that by failing to call witnesses to prove the robberies did not "interfere" with commerce, his lawyer either provided ineffective assistance or that it prejudiced his case.

In his Motion Mr. Rucker made a general claim that Mr. Jenab failed to investigate

12

potential witnesses and failed to interview anyone.  In his Traverse Mr. Rucker somewhat more specifically states that he advised Mr. Jenab to contact any neighbors and possible witnesses in the vicinity of the stores robbed "in hopes of finding" witnesses who could testify that it was not Mr. Rucker that robbed the store.  Mr. Rucker cannot prove that even if the facts are as he alleges that but for his counsel's actions, the outcome of the trial would have been different, especially where he expresses that there was only a "hope" of finding witnesses.

It is obvious both from the questions and issues presented by Mr. Jenab at the suppression hearing and trial that he did investigate and pursue this misidentification defense.  "This is not the case in which counsel presented no alibi defense."  *See Foster v. Ward*, 182 F.3d 1177, 1185 (10th Cir. 1999).  Mr. Rucker and his sister both testified as to his alleged whereabouts at the time of the robberies.  Therefore, even if there were other potential witnesses out there, they would "largely parrot" and would be "cumulative of" the other defense testimony.  *See id.*  "Accordingly, the real value of . . . [other] testimony to the defense is that of corroboration by what appears to be a disinterested witness."  *See id.*  "[T]he mere possibility that. . . [the] testimony could reflect on [Mr. Rucker and his sister's] credibility is insufficient to satisfy the 'reasonable probability' standard."  *See id.* This is true particularly in light of the Government's evidence such as the video surveillance viewed by the jury and Mr. Jenab's pursuit of the misidentification theory through Mr. Rucker, his sister, and cross-examinations.   Furthermore, Mr. Rucker does not identify specific witnesses or other details, making only a conclusory statement that there might have been other witnesses out there in the vicinity of the stores that could say it was not him who robbed

13

the store.[3]   Just as the potential witness in Foster added "nothing in terms of details sufficient to strengthen the alibi," Mr. Rucker adds nothing in terms of what details the alleged potential witnesses would have added either.   *See id.*   Therefore, the claim is denied.

Last, Mr. Rucker argues his counsel was ineffective for failing to call an expert witness on the reliability of eyewitness identifications.   First, while Mr. Jenab did not call an expert witness on the reliability of eyewitness identification, the jury was given Instruction No. 37 which underscored factors concerning eye-witness identification that the jury was permitted to consider, such as opportunity of the witness to view the criminal and the witness's degree of attention.   The instruction also posed questions for the jury to consider, such as "Did the witness have the ability and an adequate opportunity to observe the person who committed the offense(s) charged?" and "Is the testimony about an identification made after the commission of the crimes the product of the witness's own recollection?"   Furthermore, Mr. Jenab cross-examined the victims that identified Mr. Rucker as the robber, questioning them on the reliability of those identifications, such as whether the attention was focused on the robber's face or the gun and emphasizing that the victim never told police of Mr. Rucker's distinct facial characteristics, among many others.

---

[3] *See Coleman v. Brown*, 802 F.2d 1227, 1234 (10th Cir. 1986) (noting that the alleged potential witness's name had not been given and concluding "[w]eighing this potential evidence, whose very existence is dubious, against the evidence produced at trial on [the defendant's] whereabouts at the time of the murders, we are unable to conclude that the alibi testimony would have altered the trial's outcome"), citing *Wallace v. Lockhart*, 701 F.2d 719, 730 (8th Cir. 1983) (evidentiary hearing unnecessary when name of potential witness not provided); *Lawrence v. Armontrout*, 900 F.2d 127, 130 (8th Cir. 1990) (stating that when an ineffective assistance claim is based on a failure to investigate and elicit testimony from witnesses, the movant must "demonstrate, with some precision, the content of the testimony they would have given at trial." (quotation omitted)).

Mr. Rucker has not overcome the strong presumption that counsel's failure to call an expert on eyewitness identification was reasonable, particularly in light of these other strategic tactics he used to pursue this misidentification defense.[4]

        d.      "Compelling" Mr. Rucker to testify without adequate warning or any preparation

Mr. Rucker asserts, "Mr. Jenab was constitutionally deficient in his performance as a result of compelling Movant to involuntarily waive his right to remain silent by taking the witness stand to testify without adequate warning or any preparation."[5]  Traverse, p. 8.  He explains that Mr.

---

[4] *See Ford v. Dretke*, 2005 WL 1484033 (5th Cir. 2005) ("Even though they were unsuccessful in obtaining the appointment of an eyewitness expert and failed to further urge the motion when given the opportunity, Ford's attorneys presented Ford's defense of mistaken identity by effectively cross-examining Myra and Lisa and demonstrating the possibility that the sisters were mistaken in their identification of Ford as the shooter."); *Dorch v. Smith*, 105 F. App'x 650, 653 (6th Cir. 2004) (upholding as reasonable the state court's determination that counsel's failure to call an expert on eyewitness identification did not satisfy *Strickland* because counsel presented several alibi witnesses and cross-examined witnesses on the inconsistencies in identifications of the petitioner); *Hughes v. Hubbard*, 246 F.3d 674 (9th Cir. 2000) (concluding that where there were cross-examinations and specific jury instructions that alerted jurors to potential unreliability of eyewitness identifications, counsel was not unreasonable in failing to call an expert on eyewitness identification and that it did not prejudice the outcome of the trial); *Johnson v. Warren*,  2007 WL 2004819 (E.D. Mich. 2007) ("We conclude that defense counsel acted reasonably when he extensively cross-examined [the identification witnesses] regarding the relevant circumstances surrounding their identifications, and that defendant has not overcome the strong presumption that counsel employed a sound trial strategy to forego perhaps lengthy expert testimony that [the jury] may have regarded as only stating the obvious: memories and perceptions are sometimes inaccurate." (quotation omitted)).

[5] Mr. Rucker properly brings this issue as an ineffective assistance claim, claiming Mr. Jenab's decision after trial started that Mr. Rucker should testify without any preparation was objectively unreasonable under *Strickland*'s first prong.  *See United States v. Teague*, 953 F.2d 1525, 1534 (11th Cir. 1992) ("Because it is primarily the responsibility of defense

Jenab asked him questions that, because Mr. Rucker was unprepared, opened the door to the facts underlying Count 1. This count had previously been severed, and the admission of that evidence informed the jury that he was caught with a firearm two weeks before the armed robberies.

First, the Court finds that Mr. Rucker was not compelled by his attorney to testify, but that it was Mr. Rucker's own decision. This Court made a thorough inquiry into Mr. Rucker's decision to testify and determined he knowingly and voluntarily waived his right to remain silent:

> THE COURT: Now, Mr. Rucker, please stand up. I want to inquire of you concerning your awareness of your rights under the United States Constitution. Under the Constitution you as a defendant in this criminal case have an absolute legal right either to testify and subject yourself to cross examin[ation] and possible self-incrimination from your own mouth on the witness stand, or you have the right to remain silent, not testify, have the court continue to instruct the jury that they -- that that's your right and that they may not draw any inferences against you. You have both those two rights. Do you understand that you have those rights?
> THE DEFENDANT: Yes, sir.
> THE COURT: Have you discussed with your lawyer, Mr. Jenab, what might be in your best interests here in terms of the most effective way for you to defend yourself?
> THE DEFENDANT: Yes, I did.
> THE COURT: Have you arrived at a conclusion as to whether or not you believe it's in your best interests to testify or not testify?
> THE DEFENDANT: Yes.
> THE COURT: What is that conclusion?
> THE DEFENDANT: I'm going to testify.
> THE COURT: And you realize that By testifying you do subject yourself to the possibility, first of all, of being cross examined by the prosecutor and, second, that your very words that you utter from the witness stand could be used against you to convict you in this case and that that's the risk you take if you testify? You understand that?

counsel to advise the defendant of his right to testify and thereby to ensure that the right is protected, we believe the appropriate vehicle for claims that the defendant's right to testify was violated by defense counsel is a claim of ineffective assistance of counsel.").

16

THE DEFENDANT: Yes.

THE COURT: All right. So therefore you are willing to waive your protections under the Constitution against being compelled to testify, waive your right to remain silent; am I correct?

THE DEFENDANT: Yeah.

THE COURT: All right. And this is your decision and not your lawyer's decision?

THE DEFENDANT: Yes.

THE COURT: Very well. Thank you. I do believe that Mr. Rucker has knowingly and voluntarily waived any right that he has to remain silent, and if he chooses to testify, then that is a based upon a knowing waiver.

Trial Transcript, Vol. II, p. 320-22. By Mr. Rucker's own words in open court, he acknowledged that it was his decision to testify, he understood the ramifications of testifying, and that he had discussed whether or not to testify with his lawyer. He made these "solemn declarations in open court," and he provides no facts in his Motion to show that the decision was involuntary, coerced, or unknowing. *See, e.g., Lasiter v. Thomas*, 89 F.3d 699, 703 (10th Cir. 1996) ("Lasiter was bound by his 'solemn declarations in open court' and his unsubstantiated efforts to refute that record were not sufficient to require a hearing."). Therefore, his claim that his lawyer compelled him to testify is directly contradicted by Mr. Rucker's own statements in the record.

Mr. Rucker further alleges that while he was testifying, his counsel's questions to him opened the door to evidence related to Count One, which was objectively unreasonable.[6]   He

---

[6] The statements that opened the door to evidence of Count One was based on Mr. Rucker's following responses, which interestingly were not direct answers to the questions Mr. Jenab asked:

Q: And was that .38 -- you saw the .38 revolver that was admitted into evidence?
A: Yes, sir.
Q: Was that your gun?

bases this claim on the notion that his counsel did not give him adequate warning or any preparation before he took the stand.  Yet, in the excerpt above, Mr. Rucker acknowledged that he discussed the right to remain silent versus testifying with his lawyer, that he would be cross-examined by the prosecutor, and that his very own words could be used against him.  From these statements, it is contradictory for Mr. Rucker to now claim he did not receive any preparation from his lawyer.

To the extent Mr. Rucker claims his counsel did not adequately warn him that his statements could lead to Count One evidence being admissible, he cannot prove prejudice under *Strickland's* second prong. In light of the Government's evidence, there is no indication that if this Count 1 evidence had not been brought out at trial, that there was a reasonable probability that the outcome of Mr. Rucker's case would have been different. "The straightforward evidence against him was compelling," and Mr. Rucker cannot prove that the jury would have acquitted him if it had not known of the indirectly related evidence that he had a firearm two weeks prior

---

A: No, sir. *I never owned a gun.*

 Trial Transcript, Vol. II, p. 330 (emphasis added).

Q: Would you tell the jury how that came about, that you took off running.
A: Well, I had been drinking and I was scared. Two weeks before I was hospitalized for stitches underneath my face. You can see it in that one picture. You see where a mark was across my face, where the stitches was in my face.
Q: Okay.
A: I just had stitches into my face. *An officer had jumped me two weeks before that.*

 Trial Transcript, Vol. II, p. 329 (emphasis added).

to the alleged robberies.  *See Yanez v. Vallejos*, 195 Fed.Appx. 775, 2006 WL 2615537 (10th Cir. 2006).  This is particularly true when there was other evidence against him that was directly related to the two robberies and was compelling evidence of his guilt, such as the videotape surveillance showing the robber with a weapon, as well as the identification and testimony of the two victims. While the evidence was likely not helpful to Mr. Rucker's case, the introduction of such indirect evidence in the face of the wealth of direct evidence is insufficient to undermine this Court's confidence in the outcome.  Therefore, his claim on this basis is denied and an evidentiary hearing is unnecessary.

f.      Failing to object to the jury pool

Counsel did not provide ineffective assistance when he failed to object to the jury pool. The Sixth Amendment guarantees the right to a jury pool that represents a fair cross-section of the community.  *United States v. Roberts*, 45 F.3d 1423, 1439 (10th Cir.1995).  To establish a prima facie violation of the Sixth Amendment fair cross-section requirement, the defendant must show: (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process. *United States v. Edwards*, 69 F.3d 419, 437 (10th Cir.1995). Mr. Rucker failed to allege any facts demonstrating that any underrepresentation of African-Americans in the jury pool at his trial was not merely a random episode of an otherwise competent jury selection, as opposed to unfair and unreasonable

numbers or a systematic exclusion.[7]  It is well established in the Tenth Circuit the make-up of one jury pool is not evidence of a systematic exclusion of minorities, so the mere make-up of Mr. Rucker's one jury pool is insufficient to show a Sixth Amendment violation.  *See, e.g., Trice v. Ward*, 196 F.3d 1151, 1164, n.3 (10th Cir. 1999). Counsel's actions, therefore, were objectively reasonable when he did not object to the composition of the jury pool because the objection would have been without merit.

> g.   Failing to move to remove juror acquainted with the prosecutor's mother-in-law and expert witness

This basis for ineffective assistance of counsel is tied to his second claim, discussed above, that Mr. Rucker was denied his right to a fair trial.  Because that claim was without merit, counsel's decision to not move to remove the juror was objectively reasonable, and there is no indication that the decision prejudiced the outcome of Mr. Rucker's trial.  This claim is denied.

> h.   Failing to object to the Government using a peremptory challenge to remove the only potential juror that was black

In his Motion Mr. Rucker claims "defense counsel failed to object when the Government used one of their peremptory challenges to remove the African-American from the jury," and as a result of counsel's actions, he was denied a jury verdict of his peers and a fair jury verdict. Motion, p. 9.  This statement that his attorney made no objection is directly contradicted by the

---

[7] The Federal District of Kansas's jury selection process has been scrutinized and has been found to satisfy the requirements of the Sixth Amendment. *See United States v. Chanthadara*, 230 F.3d 1237, 1256-57 (10th Cir. 2000).

record of the voir dire, where Mr. Jenab stated, "Judge we would make a Batson objection to the striking of Mr. Jackson, who as the court knows is the only black person in the entire jury panel." Therefore, this section 2255 claim is denied without an evidentiary hearing.[8]

**IT IS THEREFORE ORDERED BY THE COURT** that Mr. Rucker's Section 2255 Motion is **DENIED** for the foregoing reasons.  It is further ordered that his Motion to Appoint Counsel is also **DENIED**.

**IT IS SO ORDERED.**

Dated this 11th day of October, 2007.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

---

[8] This Court overruled the *Batson* objection when the prosecutor responded with three non-race based reasons for striking Mr. Jackson.  *See generally Batson v. Kentucky*, 476 U.S. 79, 97 (1986).  The prosecutor gave such reasons as Mr. Jackson had a family member previously prosecuted by her office, that he was a member of a former jury that he indicated had not really followed the law, and that he would suffer a financial hardship with his business if he remained on the jury.  Thus, this Court determined and now still agrees the *Batson* claim was without merit.